UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA            ) | |
|                                                                  ) | |
|           v.                                                    ) | CRIMINAL NO.: 16-CR-192 |
|                                                                  ) | |
| JOSE GONZALEZ-VALENCIA,     ) | |
|     also known as "Jafett Arias-        ) | |
|     Becerra," "Chepa," "Camaron," and ) | |
|     "Santy,"                                             ) | |
|                                                                  ) | |
|                               Defendant.       ) | |

**GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION**

The United States, by and through the undersigned attorneys, respectfully moves to detain the Defendant, Jose Gonzalez-Valencia, pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-ranking leader of an international drug-trafficking organization ("DTO") operating primarily from Jalisco State in Mexico. The Defendant was extradited from Brazil and is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. *See* 18 U.S.C. § 3142(e)(3). He faces significant jail time, including a mandatory minimum sentence of ten years; has access to substantial assets; has no immigration status in the United States; and is subject to an immigration detainer. For the reasons that follow, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

**BACKGROUND**

On October 26, 2016, a federal grand jury sitting in the District of Columbia returned and filed an Indictment against the Defendant, charging him with conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, knowing and intending that such substance would be unlawfully imported into the United States from a place outside thereof, in violation of 21 U.S.C. §§ 959(a), 960, 963, and 18 U.S.C. § 2. This charge gives rise to a ten-year mandatory minimum sentence and a maximum sentence of life. The Indictment alleges that the Defendant's participation in the cocaine trafficking conspiracy began in 2006 and continued for more than a decade until his arrest in Brazil in December 2017.

The Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the operations of two large-scale DTOs based in Jalisco, Mexico, known as the Cartel de Jalisco Nueva Generacion ("CJNG"), headed by Nemesio Oseguera Cervantes, also known as "Mencho" ("Mencho"), and Los Cuinis Drug Trafficking Organization ("Los Cuinis"), headed by the Defendant's brother, Abigael Gonzalez Valencia. Los Cuinis and CJNG routinely operate together under a close alliance. The close alliance between Los Cuinis and CJNG is further strengthened by familial ties between the criminal organizations: Mencho, the leader of CJNG, is married to Rosalinda Gonzalez Valencia, who is the Defendant's sister. Together, Los Cuinis and CJNG form one of the largest, most dangerous, and prolific drug cartels in Mexico. They have been and continue to be responsible for trafficking ton quantities of illegal drugs into the United States and employing extreme violence to further that objective.

If this matter were to proceed to trial, the Government intends to prove that the Defendant was a high-ranking leader of Los Cuinis whose drug trafficking activities spanned over a decade

and extended from South America, through Mexico, and into the United States. The ultimate objective of the conspiracy was to import illegal drugs, namely cocaine, into the United States and repatriate drug proceeds to the Defendant and his associates in Mexico. The Government's evidence at trial will consist of testimony from cooperating witnesses regarding the Defendant's drug trafficking activities; lawfully intercepted communications in which the Defendant reveals his participation in drug trafficking activities; and testimony from law enforcement officers about the seizure of narcotics shipments that the Defendant helped to organize and in which the Defendant invested.

The Defendant was arrested in Brazil in December 2017 and was extradited from Brazil to the District of Columbia on November 10, 2021. He made an initial appearance in the Superior Court of the District of Columbia on November 11, 2021, at which time he was detained pending his initial appearance and arraignment in this Court. The Defendant has no legal immigration status in the United States. Immigration and Customs Enforcement issued a detainer and would take the Defendant into custody should he be released pending trial.

## THE BAIL REFORM ACT

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any

other person and the community, the Court shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. 18 U.S.C. § 3142(e)(1), (f)(2).

The Bail Reform Act lists the following factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, financial resources, length of residence in the community, community ties, and past conduct; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Under governing case law, the government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing pursuant to the Bail Reform Act. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure a defendant's presence as to both flight risk and danger if, as in this case, the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In the Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substances Act. Thus, the presumption under § 3142(e)(3) applies here.

When the presumption applies, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in 18 U.S.C. § 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C.

2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011), and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. Furthermore, the concept of "dangerousness" in relation to serious drug crimes encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "harm to society caused by [continued] narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *see* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). In *United States v. Munchel*, the D.C. Circuit acknowledged that the threat of future drug trafficking could be an "identified and articulable threat to the community." 991 F.3d 1273, 1283 (D.C. Cir. 2021). For the reasons addressed below, the Defendant is unable to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.

## **ARGUMENT**

The Defendant poses a significant danger to the community and risk of flight due to his leadership in and association with two violent and well-financed international DTOs, the weight of the evidence against him, his complete lack of ties to the District, the significant financial

5

resources he has at his disposal, and his connections to other countries in Central and South America. Notably, pretrial detention has also been ordered in four cases pending in this District related to the present case pursuant to LCrR 57.12. *See United States v. Gerardo Gonzalez Valencia,* No. 16-cr-65, Minute Order, May 20, 2020; *United States v. Raul Florez-Hernandez*, No. 17-cr-051, Minute Order, Feb. 9, 2021; *United States v. Ruben Oseguera Gonzalez*, No. 16-cr-229, Minute Order, Feb. 26. 2020; *United States v. Jessica Johanna Oseguera Gonzalez*, No. 20-cr-40, Memorandum Opinion & Order, Mar. 5, 2020, *aff'd* No. 20-3018 (D.C. Cir. Apr. 29, 2020).

## **Nature and Circumstances of the Offenses Charged**

The Defendant was a high-ranking leader of the Los Cuinis, a major Mexican DTO. Los Cuinis works in close alliance with CJNG. Together they form one of the largest, most dangerous drug cartels currently operating in Mexico and are responsible for trafficking tonnage quantities of cocaine, methamphetamine, and heroin into the United States, as well as for violence that has caused significant loss of life in Mexico.

As a high-ranking leader of the Los Cuinis DTO, the Defendant employed and supervised numerous individuals who worked at his behest to facilitate the unlawful importation of cocaine into Mexico for the further unlawful importation into the United States, and he was involved in numerous acts of violence in furtherance of the drug trafficking conspiracy. The Defendant has been involved in large-scale drug trafficking from approximately 2006 until his arrest in 2017.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.

Supp. 2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392.  As discussed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the count charged in the Indictment and the U.S. Sentencing Guidelines range for the charged offense would be even higher—292 to 365 months based on only the amount of cocaine involved in the offense, not even taking into consideration any other applicable enhancements, such as leadership.

Accordingly, the breadth, scope, nature, and potential penalties of the charged offense support a finding that no conditions or combination of conditions exist that will reasonably assure the Defendant's appearance before this Court and the safety of the community.

### History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish by a preponderance of the evidence that his serious risk of flight in this case due to his lack of ties to this District or the United States, his substantial network outside of the United States, and the resources he has at his disposal. Additionally, the Defendant has no immigration status in the United States and is subject to an immigration detainer and would be taken into custody upon release on conditions pending trial.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23).  This is nowhere more evident than in the type of transnational organized crime which the Defendant has engaged in, which often spans multiple countries and has the potential to generate millions of

dollars in gross proceeds from the sale of potent controlled substances. Indeed, "Congress made 'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F. Supp. 2d 17, 19 (D.D.C. 1999). Even if the Defendant were to execute an agreement to forfeit a significant amount of money if he failed to appear, the financial resources of the CJNG and/or Los Cuinis are so vast that its loss would be insignificant.

There is a serious risk that the Defendant would attempt to leave the United States if given the opportunity. The Defendant is a Mexican citizen; he has no known assets, no employment, and no property in the United States. Further, he has no known lawful contacts in this District or the United States and, thus, has no reason to remain in the District of Columbia. The Defendant has been brought to the United States and this District under the authority of this Court solely for the purpose of federal prosecution. In short, the Defendant has no reason to remain in this country other than to face criminal charges, and he therefore represents an overwhelming risk of flight if released from custody. Additionally, members of the CJNG and/or Los Cuinis may aid and assist the Defendant in fleeing justice. Those criminal organizations maintain routes for smuggling illegal proceeds from their narcotics trafficking activities out of the United States and into Mexico. If the Defendant is able to cross into Mexico, the CJNG and Los Cuinis DTOs exert a high degree of corrupt control over various municipalities and states in Mexico, and the DTOs could be able to provide the Defendant with a certain measure of freedom from arrest, if he returned to Mexico.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment

potential, but defendant had ability to flee the United States); *see also Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

## **Safety of the Community**

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C.C.A.N. 1, 23); *accord United States v. Creekmore*, No. CR97-624-M, 1997 WL 732435 (D.D.C. Sep. 25, 1997). In order to detain a defendant based on dangerousness to the community, "a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence … But it must be clearly identified." *Munchel*, 991 F.3d at 1283. "Whether the defendant poses a threat of dealing drugs, for instance, may depend on the defendant's past experience dealing … and her means of continuing to so in the future." *Id.*

The Defendant was a high-level leader of an international DTO, which imported cocaine, dangerous and addictive controlled substances, into the United States for distribution to the United States public at large. The DTO is also extremely violent and its members routinely commit murder, kidnappings, assault, and other violent acts. The Government has information personally implicating the Defendant in acts of violence. Accordingly, if he were released the Defendant would pose a significant risk to the safety of the community, both here in the United States and abroad.

9

**Weight of the Evidence**

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina Coronado*, 588 F. Supp. 2d 3, 5 (D.D.C. 2008) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant here is particularly strong. The evidence includes testimony of multiple witnesses with personal knowledge of the Defendant's role in this international drug trafficking conspiracy; intercepted communications between the Defendant and his co-conspirators regarding the trafficking of narcotics; and testimony and evidence about the seizure of narcotics shipments organized and funded by the Defendant. Given the strength of the evidence against him, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community.

/
/
/
/
/
/
/
/
/
/
/
/
/

## Conclusion

For the foregoing reasons, there is "no condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(1). Accordingly, he should be detained pending trial.

Respectfully submitted this 11th day of November, 2021.

                                        ARTHUR G. WYATT, Chief
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      United States Department of Justice

By:    */s/ Kate Naseef*
        Kate Naseef, Trial Attorney
        Kaitlin Sahni, Trial Attorney
        United States Department of Justice
        Narcotic and Dangerous Drug Section
        145 N Street, Northeast
        East Wing, Second Floor
        Washington, D.C. 20530
        Kate.Naseef@usdoj.gov
        (202) 514-0917

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via e-mail to counsel of record for the Defendant, this 11th day of November, 2021.

                By:    */s/ Kate Naseef*
                          Kate Naseef
                          Trial Attorney
                          Narcotic and Dangerous Drug Section
                          Criminal Division
                          U.S. Department of Justice